IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **COREY WAYNE STONE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No. 4:20-cv-406-O |
| | § | |
| **ERIC D. WILSON, Warden,** | § | |
| **FMC-Fort Worth, et al.,** | § | |
| | § | |
| **Defendants.** | § | |

**OPINION and ORDER OF DISMISSAL**
**UNDER 28 U.S.C. §§ 1915A & 1915(e)(2)(B)**

This case is before the Court for review of pro-se-inmate/plaintiff Corey Wayne Stone's ("Stone") current pleadings under the screening provisions of 28 U.S.C. §§ 1915A and 1915(e)(2)(B). After reviewing the amended complaint and more definite statement, the Court finds that Stone's remaining claims must be **DISMISSED**.

**I.    PLAINTIFF'S PLEADINGS/BACKGROUND**

In the originally filed complaint, Stone, an inmate at FMC-Fort Worth, complained of the conditions of COVID-19 and named three officials at FMC-Fort Worth. Complaint 1, 3, ECF No. 1. Although Stone sought monetary damages from those individuals, he also sought an order for "immediate compassionate release of Plaintiff." *Id*. at 4. Because the Court did not have jurisdiction to grant such relief, it previously issued an Opinion and Order of Partial Dismissal dismissing Stone's motion/request for compassionate release under 18 U.S.C. § 3582(c)(1)(A) for lack of jurisdiction. Op. and Order, ECF No. 6.

**A.    Amended Complaint**

Before the Court could screen the original complaint, Stone filed an amended form complaint

1

with extensive attachment pages. Am. Compl. 1-45, ECF No. 9. As Stone filed an amended complaint, it supersedes and replaces the complaint and becomes the operative pleading for purposes of the Court's screening review. *See generally Clark v. Tarrant County*, 798 F.2d 736, 740 (5th Cir. 1986) (finding that an amended complaint entirely supersedes and takes the place of an original pleading, rendering the original complaint of no legal effect); *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985) (same). In the amended complaint, Stone lists as defendants the United States of America, the Department of Justice, the Bureau of Prisons, Eric Wilson, Warden, FMC-Fort Worth, and B. Harris, Case Manager, FMC-Fort Worth. Am. Compl. 2, ECF No. 9. As a part of his jurisdiction pleading, Stone contends that his "rights under the 8th and 14th Amendments were violated due to failure of Defendants to follow relevant statutes including the First Step Act and [18] U.S.C. § 3582(c)(1)(A)(i). Previous Judicial decisions in the case were based on erroneous information concerning the conditions at Federal Medical Center-Fort Worth." *Id.* at 3. In support of this claim, Stone refers the Court to two attachment pages listing extensive challenges to the rulings of United States District Judge Marcia A. Crone on his motions to reduce sentence filed in the United States District Court for the Eastern District of Texas. *Id*. at 3-5.

Helpfully, Stone also attached copies of Judge Crone's Memorandum and Orders, first denying his multiple motions for a reduction in sentence under the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A), and subsequently denying Stone's motion for reconsideration of the order denying his motions to reduce sentence. *Id*. at 28, 35, ECF No. 9 (copies of orders entered in *United States* v. *Stone*, No. 1:17-cr-100 (E.D. Tex. April 21, 2020, and April 29, 2020)). In detailed single-spaced type, Stone essentially asks this Court to review and overrule the orders of the district judge presiding over his criminal case. *Id.* at 4-5. As to his claims against the defendants, Stone writes: "The Defendants, each and every one continue [sic] to imprison Plaintiff despite the clear entitlement of

Plaintiff to relief under the First Step Act and [18] U.S.C. § 3582(c)(1)(A)(i). This Violation damages me to the amount of at least $100,000 due to continued unlawful deprivation of freedom and separation from my loved ones." *Id.* at 9. In addition to this monetary damage request, Stone writes "[t]he court is requested to issue a declaratory judgment order correctly stating Stone is eligible for immediate release under 18 U.S.C. 3582(c)(1)(A)(i), and the First Step Act." *Id*. at 10.

### B. More Definite Statement

To aid in making the determination required by the screening statutes, a district court may send a plaintiff a questionnaire requiring greater detail about the facts supporting his claims. *See Talib v. Gilley*, 138 F.3d 211, 212 (5th Cir. 1998) (citing *Spears v. McCotter*, 766 F.2d 179, 181-82 (5th Cir. 1985)); *see also Cay v. Estelle*, 789 F.2d 318, 323 (5th Cir. 1986). The response to the questionnaire becomes a part of the plaintiff's pleadings as a more definite statement. *See Talib*, 138 F.3d at 212 (citing *Eason v. Holt*, 73 F.3d 600, 602 (5th Cir. 1996)). After review of the amended complaint, the Court instructed Stone to answer the Court's particular questions in the form of a more definite statement, and Stone then filed a more definite statement ("MDS"). ECF No. 12.

In the first three questions, the Court directed Stone to state the basis of his claims against the United States of America, the Department of Justice, and the Bureau of Prisons. Order for MDS 2-3, ECF No. 11. Stone responded that he sought to dismiss the United States of America and the Department of Justice. MDS 1, ECF No. 12. As to his naming of the Bureau of Prisons, Stone wrote instead that he wished "to narrow down to individuals in their individual capacities." *Id.* at 2. Stone did not otherwise assert any basis for a claim against the Bureau of Prisons.

In response to the questions about the naming of Warden Eric Wilson, Stone made several allegations. Stone writes that Wilson was "charged with the employment of policy, with the protection, custody and care of this Plaintiff." MDS 4, ECF No. 12. He alleges a failure to provide

protection and take reasonable mitigating efforts to control Covid-19, and he claims a failure to properly train and supervise staff amounted to "reckless indifference to his constitutionally protected rights." *Id.* Stone writes that as the "highest authority" responsible for the oversight of FMC-Fort Worth staff, Wilson is directly and indirectly liable for both interference with his First Amendment right to redress and to access to courts. *Id.* at 5, 6. He also alleges that Wilson was responsible for cruel and unusual punishment violations due to inhumane conditions of confinement, lack of soap, lack of sanitation, lack of adequate ventilation, failure to meet CDC standards, lack of medical staff, failure to wear personal protection equipment ("PPE"), which amounted to deliberate indifference under the Eighth Amendment. *Id.* at 5-6.

With regard to defendant B. Harris, Stone writes that he "failed to properly process home confinement pursuant to the Cares Act and the Memorandum of B.O.P. Director Barr is [sic] deliberate indifference to my safety and well being for which I later contracted Covid-19 and [which] caused serious side effects to my appendix that hospitalized me for over 5 days." *Id.* at 8. Stone alleges this amounted to an abuse of discretion, and he contends that Harris's "breach of duty" amounted to aviolation of the Eighth Amendment in failing to provide him access to timely medical care. *Id.* at 9.

In his more definite statement, Stone also provided facts and claims against two new defendants, BOP Director Michael Carvajal and FMC-Fort Worth Unit Manager Gutierrez. *Id.* at 1-2. As to Carvajal, Stone writes that as the "highest authority in the BOP," he was responsible to make sure all staff under his supervision were properly trained. *Id.* at 1-2. He contends that Carvajal was liable for a failure in direct supervision to stop the transfer of staff from institution to institution that resulted in the spread of Covid-19. He claims Carvajal was indirectly responsible for the threats by staff towards him, in violation of the First and Eighth Amendments. *Id.* at 2.

4

With regard to Unit Manager Gutierrez, Stone recites that he failed in his duty to supervise the inmates in the Dallas Unit within FMC-Fort Worth, and in particular to properly process grievances, which resulted in a "chill" effect on Stone's First Amendment right to redress his government, and an interference with his right of access to courts. *Id*. Also, like the allegations against Warden Wilson, Stone contends that Gutierrez failed in his duty to protect all inmates from a lack or failure to supply soap and adequate sanitation, "thereby putting plaintiff at risk of serious harm and directly violating his 8th Amendment rights . . . ." *Id.* at 3. He further contends that Gutierrez took no mitigating measures and made no efforts to protect inmates from Covid-19. *Id.* at 4.

When asked by the Court what form of relief he sought from each defendant, Stone wrote "Plaintiff seeks monetary relief as previously stated because it is the only remedy for the violation of Constitutional rights."[1]

## II. PRELIMINARY SCREENING UNDER § 1915A and § 1915(e)(2)(B)

Plaintiff Stone is an inmate who has been permitted to proceed *in forma pauperis*. As a prisoner seeking redress from a governmental entity, his pleadings are subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998) (per curiam). Because Stone is proceeding *in forma pauperis*, his pleadings are also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal

---

[1] Stone also seeks to obtain discovery. MDS 12, ECF No. 11. Discovery was previously stayed by the terms of the PLRA Filing Fee Order issued on April 30, 2020. Filing Fee Order 2, ECF No. 5. There is no reason for the parties to engage in discovery until the Court has reviewed the pleadings and attachments under the PLRA screening provisions. *See generally Petrus v. Brown,* 833 F.2d 581, 583 (5th Cir. 1987) ("[a] trial court has broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined"). Under *Schultea v. Wood,* 47 F.3d 1427, 1434 (5th Cir. 1995), during this threshold pleading stage, this Court may ban discovery. *Id.* Thus, as the Court has determined that Stone's claims do not survive screening, his request for discovery is **DENIED**.

of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To avoid dismissal for failure to state a claim, plaintiffs must allege facts sufficient to "raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" do not suffice to state a claim upon which relief may be granted. *Id.*

## III. ANALYSIS

### A. Claim for Immediate Release

As noted, early in the case, the Court entered an Opinion and Order partially dismissing Stone's motion/request for release through an incorporated motion to reduce for lack of subject matter jurisdiction. Op. and Order, ECF No. 6; Rule 54(b) Judgment, ECF No. 7. Notwithstanding that ruling, in the subsequently filed amended complaint, Stone again seeks such relief from the Court, writing that "[t]he court is requested to issue a declaratory judgment order correctly stating Stone is eligible for immediate release under 18 U.S.C. § 3582(c)(1)(A)(i), and the First Step Act." Am. Compl. 10, ECF No. 9. As this claim has already been resolved, Stone's claims to immediate release must be dismissed for the reasons already stated.

### B. Voluntary Dismissal

Even though Stone listed the United States of America, the Department of Justice, and the Bureau of Prisons as named defendants in his amended complaint, in his more definite statement, he expressly informed the Court that he sought to dismiss the United States and the Department of Justice, and sought no relief against the Bureau of Prisons other than as to some individual defendants. MDS 1, ECF No. 12. As a result, all Stone's claims against these three government entities must be dismissed without prejudice.

### C. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971)

#### 1. Introduction

Plaintiff Stone's remaining claims seek monetary damages relief for constitutional claims against BOP director Michael Carvajal, Warden Eric Wilson, Unit Manager Gutierrez, and Case Manager B. Harris. Am. Compl. 2, ECF No. 9; MDS 1-8, ECF No. 12. Because he seeks monetary damages, this action for such relief against the individual defendants is brought under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics.* 403 U.S. 388 (1971). Also, because 42 U.S.C. § 1983 does not provide a cause of action against federal officials acting under color of federal law, *Roots v. Callahan*, 475 F.2d 751, 752 (5th Cir. 1973), insofar as Plaintiff may be attempting to plead a § 1983 claim, the Court does not address such a claim. For the reasons that follow, even liberally construed, Plaintiff's remaining claims must be dismissed as frivolous and/or for failure to state a claim.

#### 2. No Respondeat Superior/Vicarious Liability

In order to state a *Bivens* claim, a Plaintiff must allege the personal involvement of each defendant. *Guerrero-Aguilar v. Ruano*, 118 F. App'x 832, 833 (5th Cir. 2004). Federal officials cannot be held vicariously liable for the acts of subordinates under the doctrine of respondeat superior. *Cronn v.*

*Buffington*, 150 F.3d 538, 544 (5th Cir 1998) (citing *Abate v. Southern Pac. Transp. Co.*, 993 F.2d107, 110 (5th Cir. 1993)). Without personal involvement or participation in an alleged constitutional violation, the individual should be dismissed as a defendant. *Id.* (citing *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987)).

As noted above, in reviewing Stone's more definite statement, he alleges that each of defendants Carvajal, Wilson, and Gutierrez was "indirectly responsible" for the actions of other staff, or in the case of Carvajal and Wilson, were the "highest authority" responsible for the actions of other FMC-Fort Worth staff. MDS 1, 3, 4, ECF No. 12. To the extent Stone asserts claims against any of these three defendants based upon the alleged failures of subordinate officers, such claims of vicarious liability do not state claims for relief under *Bivens* and must be dismissed.

### 3. *Bivens* does not extend to the bulk of the Constitutional Claims against the Individual Defendants

Plaintiff seeks monetary relief under *Bivens* based on alleged constitutional violations by federal actors. Given the context of this case, the bulk of his *Bivens* claims cannot succeed and must be dismissed.

*Bivens*, unlike 42 U.S.C. § 1983 (applicable to state actors), is not a Congressional statute that "entitles an injured person to money damages if a state official violates his or her constitutional rights." *Ziglar v. Abbasi*, __ U.S. __, 137 S. Ct. 1843, 1854 (2017) ("Congress did not create an analogous statute for federal officials. Indeed, in the 100 years leading up to *Bivens*, Congress did not provide a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government.").

The United States Supreme Court "has approved of an implied damages remedy under the Constitution itself" only three times – in *Bivens*, to enforce "a damages remedy to compensate persons

injured by federal officers who violated the prohibition against unreasonable search and seizures" in violation of the Fourth Amendment; in *Davis v. Passman*, 442 U.S. 228 (1979), holding "that the Fifth Amendment Due Process Clause gave [a Congressman's administrative assistant] a damages remedy for gender discrimination"; and in *Carlson v. Green*, 446 U.S. 14 (1980), holding "that the Eighth Amendment Cruel and Unusual Punishments Clause gave [a prisoner] a damages remedy for failure to provide adequate medical treatment." *Abbasi*, 137 S. Ct. at 1854-55; *see id.* at 1855 ("These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself."). Further, the Supreme Court "has 'never held that *Bivens* extends to First Amendment claims.'" *Butler v. S. Porter*, 999 F.3d 287, 293 (5th Cir. 2021) (quoting *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012)).

The Supreme Court has developed a two-part test to determine if a *Bivens* claim may proceed. *Abbasi*, 137 S. Ct. 1843, 1843 (2017). Because *Bivens* is a judicially crafted remedy, and not a statutory one like 42 U.S.C. § 1983, courts should consider (1) whether the case "presents a new context" and, if it does, (2) whether "there are any special factors that counsel hesitation about granting the extension." *Byrd v. Lamb*, 990 F.3d 879, 881 (5th Cir. 2021) (finding "the *Bivens* question is antecedent" to other issues in a case, including qualified immunity (internal quotations and citations omitted)). The Supreme Court has also strongly counseled against extending *Bivens* to new contexts, *Hernandez v. Mesa*, 140 S. Ct. 735, 744 (2020), and repeatedly held that such extensions are "a 'disfavored' judicial activity." *Abbasi*, 137 S. Ct. at 1857; *see also Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020) ("*Bivens* was the product of an 'ancient regime' that freely implied rights of action" and that "ended long ago.") (emphasis in original), *cert. denied*, 2021 WL 2044553, at *1 (U.S. May 24, 2021).

        *a.*      *Some of Plaintiff's Claims Represent a New Bivens Context*

For purposes of implying a damages remedy under the Constitution, a proposed *Bivens* claim is "new" if the "case is different in a meaningful way from previous *Bivens* cases" in which the Supreme Court had recognized a *Bivens* remedy. *Abbasi*, 137 S. Ct. at 1859. "Virtually everything else is a 'new context'" and the "understanding of a 'new context' is broad" … "because 'even a modest extension' of the *Bivens* trilogy 'is still an extension.'" *Oliva*, 973 F.3d at 442 (citations omitted). The types of differences that are meaningful enough to make the context "new" are myriad and include "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider." *Abbasi*, 137 S. Ct. at 1860. Moreover, "it is not enough even if 'a plaintiff asserts a violation of the same clause of the same amendment in the same way.'" *Oliva*, 973 F.3d at 442 (quoting *Cantu v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019)).

Construed liberally, and because Plaintiff requests damages against federal defendants based on his conditions of confinement, and for interference with his right of access to courts and to the adequate processing of grievances, the Court reviews his allegations as seeking to raise claims for violations of both the First and Eighth Amendments. Specifically, Plaintiff asserts *Bivens* claim against Director Carvajal, Warden Wilson, and Unit Manager Gutierrez under both the First Amendment and the Eighth Amendment. MDS 1-7, ECF No. 12. The Eighth Amendment claims against these defendants allege that conditions of confinement at FMC-Fort Worth were inhumane and amounted to cruel and unusual punishment in allowing the spread of Covid-19, in failing to have adequate staff, provide adequate sanitation, provide adequate soap, and provide enough PPE, and to

otherwise mitigate exposure to Covid-19. *Id*. at 2-6. Stone's claims against Carvajal, Wilson, and Gutierrez under the First Amendment arise from alleged interference with his right of access to court and to redress his grievances. *Id,* at 2-3, 6. As to defendant B. Harris, Stone alleges only an Eighth Amendment violation arising from Harris's alleged failure to provide him timely medical care. *Id.* at 8-10. As explained below, since Stone's claims against Harris arise from a context in which the Supreme Court has previously recognized a *Bivens* cause of action, that claim will be considered on its merits, *infra*.

Because the Court concludes that Stone's claims against Carvajal, Wilson, and Gutierrez under the First and Eighth Amendments differ significantly from the *Bivens* trilogy of actions sanctioned by the Supreme Court, the Court concludes those claims arise in a new context. *Compare Bivens*, 403 U.S. at 389-90 (manacling the plaintiff in front of his family in his home and strip-searching him in violation of the Fourth Amendment); *Carlson*, 446 U.S. at 16-18 (recognizing a *Bivens* cause of action under the Eighth Amendment for a deceased prisoner who was deprived medical attention by prison officers who knew of his serious medical condition); *Davis*, 442 U.S. at 229-34 (recognizing a *Bivens* cause of action under the Due Process Clause of the Fifth Amendment for a female employee who was terminated based on her gender).

The Court reaches this determination for several reasons. First, Plaintiff does not allege Fourth or Fifth Amendment violations and he makes no factual allegations that would support such claims. As such, his case is different from *Bivens* and *Davis*. Although Stone premises some of his claims on alleged violations of the Eighth Amendment, as did the plaintiff in *Carlson*, his Eighth Amendment conditions-of-confinement claims differ significantly from those asserted in *Carlson*. There, the Court recognized a *Bivens* cause of action under the Eighth Amendment in a case involving an alleged failure to provide medical treatment for an inmate with a "serious[ ]" and "Chronic Asthmatic

Condition" known to prison officials. *Carlson*, 446 U.S. at 16 n.1. Stone's Eighth Amendment allegations against Carvajal, Wilson, and Gutierrez do not concern any alleged delay or deprivation in medical care, but rather raise challenges to his conditions of confinement at FMC-Fort Worth, including allegations of inadequate staffing, overcrowding, inadequate social distancing, lack of adequate sanitation, lack of adequate PPE, and failure to properly respond to the COVID-19 pandemic. Any other conclusion as to these claims is foreclosed by *Abbasi*, as the Court there confined *Carlson* to its facts. Relying in part on its holding in *Correctional Services Corp. v. Malesko*, 534 U.S. 61 (2001), the *Abbasi* Court held that *Carlson* had only recognized an implied damages remedy under the Eighth Amendment for "failure to provide medical treatment." *Abbasi*, 137 S. Ct. at 1859, 1865. Other courts, post-*Abbasi*, have held that *Bivens* will not be extended to reach "non-medical care conditions of confinement" claims. *See Menard v. Mansi,* No. 21-cv-2130, 2021 WL 2156366, *4 (E.D. Pa. May 27, 2021) (citations omitted); *Hill v. Lappin*, No. 3:11-cv-1609, 2021 WL 2222725, *3 (M.D. Pa. Jun. 2, 2021) (noting that although courts "in the wake of *Abbasi*" initially did not *sua sponte* consider whether conditions-of-confinement claims remained viable, "[a]s the dust settles, however, and courts began to appreciate *Abbasi'*s watershed scope, the better-reasoned authority has declined to recognize a *Bivens* remedy for Eighth Amendment conditions-of-confinement . . . claims.")

Further, with respect to Plaintiff's First Amendment claim, as previously stated, the Supreme Court has "never held that *Bivens* extends to First Amendment claims." *Butler*, 999 F.3d at 293 (declining to extend *Bivens* to a prisoner's First Amendment retaliation claim); *Watkins v. Three Admin. Remedy Coordinators of Bureau of Prisons*, 998 F.3d 682, 686 (5th Cir. 2021) (noting that the "Supreme Court has not only never recognized a *Bivens* cause of action under the First Amendment, but also once rejected a First Amendment retaliation *Bivens* claim for federal

employees" and declining to extend *Bivens* to a prisoner's First Amendment claim that he was subjected to spoiled and contaminated food as a form of retaliation by prison officials) (quotations omitted). In short, none of the three cases in which the Supreme Court recognized a *Bivens* remedy has sufficient overlap or commonality with Stone's First and Eighth Amendment claims against Carvajal, Wilson, and Gutierrez in the instant case. As such, this "new" designation is warranted because *Bivens* remedies, as previously recognized, arose under different constitutional amendments and/or factually different circumstances.

As the Court concludes that Plaintiff's claims against Carvajal, Wilson, and Gutierrez represent a "new" *Bivens* context, it proceeds to the second step of the analysis.

     *b. Special Factors Counsel Hesitation in Extending New Bivens Remedy Here*

When a claim arises in a different context from one of the three Supreme-Court-recognized *Bivens* claims, the Court turns to whether "there are special factors counselling hesitation in the absence of affirmative action by Congress." *Abbasi*, 137 S. Ct. at 1857 (cleaned up). In such a case, "a *Bivens* remedy will not be available." *Id.*

The "special factors" inquiry "concentrate[s] on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1857-58. These factors include whether Congress has legislated on the right at issue and whether alternative remedies exist for protecting that right. *Id.* at 1858, 1862. Courts also consider separation-of-powers concerns. *Hernandez*, 140 S. Ct. at 743.

Three special factors cause the Court to hesitate here. First, congressional legislation already exists in this area. Congress addressed the issue of prisoners' constitutional claims in the PLRA, 42 U.S.C. § 1997e, which "does not provide for a standalone damages remedy against federal jailers."

13

*Abbasi*, 137 S. Ct. at 1865. This factor supports the conclusion that Congress considered and rejected a federal damages remedy for claims like Plaintiff's.

Second, the Federal Tort Claims Act ("FTCA"), provides a potential, alternative remedy, and militates against expansion of a *Bivens* remedy. *See Abbasi*, 137 S. Ct. at 1865 ("the existence of alternative remedies usually precludes a court from authorizing a *Bivens* action."). The FTCA waives the Government's sovereign immunity from tort claims that arise from the negligent or wrongful acts or omissions of federal employees in the course of their employment. 28 U.S.C. §§ 1346(b)(1), 2679(b)(1).

Third, as the Fifth Circuit recently stated in *Butler*, "separation-of-powers concerns counsel against extending *Bivens*." *Butler*, 999 F.3d at 295. The Supreme Court has recognized that

> [r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint.

*Id.* (quoting *Turner v. Safley*, 482 U.S. 78, 84-85 (1987), *superseded by statute on other grounds*, 42 U.S.C. § 2000cc-1(a), *as recognized in Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005)). As in *Butler*, the Court concludes that extending *Bivens* to Stone's First Amendment claims and to his Eight Amendment conditions-of-confinement claims "would run afoul of this restraint and risk improperly entangling courts in matters committed to other branches. Indeed, because of the very complex nature of managing federal prisons, such a holding would substantially impinge on the executive branch, in addition to the legislative branch." *Id.* at *5. "Such a result would be a paradigmatic violation of separation-of-powers principles." *Id.*

For these reasons, the *Bivens* claims that Plaintiff asserts against Carvajal, Wilson, and Gutierrez for monetary relief must be dismissed.

#### 4. No Deliberate Indifference to Serious Medical Needs by B. Harris

As explained above, in *Carlson v. Green*, 446 U.S. 14 (1980), the Supreme Court held that "the Eighth Amendment Cruel and Unusual Punishments Clause gave [a prisoner] a damages remedy for failure to provide adequate medical treatment." *Abbasi*, 137 S. Ct. at 1854-55. Thus, with regard to B. Harris, the only defendant about whom Stone makes particular allegations regarding his medical care, the Court will assume without deciding that *Carlson* provides Stone a *Bivens* remedy to pursue claims under the Eighth Amendment for failure to provide timely medical care.

It is well-settled that deliberate indifference to a prisoner's serious medical needs has been deemed to amount to cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-106 (1976). Such a finding of deliberate indifference, though, "must rest on facts clearly evincing 'wanton' actions on the parts of the defendants." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985) (also noting that the Supreme Court defined wantonly to mean "causelessly, without restraint, and in reckless disregard of the rights of others") (citing *Smith v. Wade*, 461 U.S. 30, 39 n.8 (1983)). This subjective deliberate-indifference standard is very stringent and is equated with the standard for criminal recklessness:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Hare v. City of Corinth*, 74 F.3d 633, 648 (5th Cir. 1996) (*en banc*), *opinion after subsequent remand*, 135 F.3d 320, 327 (5th Cir. 1998). Consistent with this standard is the recognition that negligent or mistaken medical treatment or judgment does not implicate the Eighth Amendment and does not provide the basis for a civil-rights

action. *See Estelle*, 429 U.S. at 106 ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner[.]"); *see also Varnardo v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (holding neither unsuccessful medical treatment, neglect, nor medical malpractice give rise to a § 1983 cause of action) (citations omitted).

With regard to Stone's claims against B. Harris, he alleges that Harris's failure to have released him under the Cares Act, when he knew Stone had underlying medical conditions, resulted in Stone contracting Covid-19 and the side effects of being hospitalized for 5 days and ultimately having his appendix removed. MDS 8-9, ECF No. 12. But Stone's narrative and exhibits show that he was repeatedly treated, and that the hospital doctors delayed the appendicitis procedure for medical reasons. *Id.* at 10-16.

First, Stone acknowledges he was seen in the clinic on January 9, 2021, where he was given a "G.I. cocktail." Then on January 11, 2021, he was taken to see a different in-house-provider (IHP) who prescribed 800 milligrams of Ibuprofen and told him to return to sick call the next day. Stone did so on January 12, 2021, and was eventually seen by Dr. Eilert, who after examining Stone, stated "it was either [his] appendix or [his] bladder and [he] would be going to the hospital." *Id.* at 10-11. Stone reports he was examined at JPS Hospital later that day, but claims the hospital refused surgery because he tested positive for Covid-19. *Id.* at 11. A medical record submitted by Stone with his MDS, however, dated January 16, 2021, when he had a laparoscopic appendectomy, and noting his admission date of January 12, 2021, provided other reasons for the delay in the surgery:

> Corey Stone is a 39 y.o. male who presented to the emergency department from jail complaining of right lower quadrant abdominal pain, Workup was inconclusive and imaging was not consistent with appendicitis. The patient was treated conservatively with antibiotics but did not improve. Benefits, alternatives, and risks including bleeding, infection, damage to nearby structures, failure of procedure, and need for other procedures were discussed with the patient. They voiced understanding and wished to proceed.

MDS 13 (January 16, 2021 Medical Record), ECF No. 12.

Upon review of Stone's allegations against Harris being involved in any denial of medical care, the Court finds that Stone's own pleading and medical record refute his claim. Stone was seen at the FMC-Fort Worth clinic and was referred to outside medical care at JPS Hospital, where he was observed and given antibiotics as a part of "conservative treatment." The Court finds that Stone's claims, at best, involve disagreements among physicians and medical care providers on the proper course of care and what medical care was necessary. Such disagreement between an inmate and his physicians as to what medical care is appropriate does not state a claim for Eighth Amendment indifference to medical needs. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997) (affirming the dismissal of suit as frivolous where prisoner claimed medical personnel should have tried different methods of diagnosis and treatment); *see also Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (disagreement between inmate and his physicians regarding what medical care is appropriate actionable only under exceptional circumstances). Stone's factual allegations against B. Harris simply do not rise to the "extremely high standard" to support a claim of deliberate indifference. *See Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) ("Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'") (internal citations omitted). Thus, even assuming without deciding that Carlson provides Stone a *Bivens* remedy, his *Bivens* claim for delay or denial of medical care asserted against B. Harris must be dismissed.

### IV. LEAVE TO AMEND

Generally, "a pro se litigant should be offered an opportunity to amend his complaint before it is dismissed." *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009). The Court, however, is not required to grant leave to amend "if the plaintiff has already pleaded [his] 'best case." *Id*.

For the reasons outlined here, Stone 's claims are fatally infirm. In addition, Stone filed an amended complaint, and the Court has already given him a further opportunity to supplement that amended complaint by his answers to the Court's questions in the more definite statement. *See* MDS, ECF No. 12.

Thus, the Court concludes that Plaintiff Stone has already pleaded his best case and granting leave to amend would be futile and cause needless delay.

### V. CONCLUSION and ORDER

It is therefore **ORDERED** that Plaintiff Corey Wayne Stone's renewed motion/request for "immediate release," construed as seeking such relief under 18 U.S.C. § 3582(c)(1)(A), is **DISMISSED** for the reasons already stated by the Court in its April 30, 2020 Opinion and Order of Partial Dismissal.

It is further **ORDERED** that all Stone's claims against the United States of America, the Department of Justice, and the Bureau of Prisons, are **DISMISSED** without prejudice.

It is further **ORDERED** that all Stone's remaining *Bivens* claims seeking monetary damages are **DISMISSED with prejudice** under authority of 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(b)(i) and (ii).

**SO ORDERED** this **13th day** of **July, 2021**.

Reed O'Connor
UNITED STATES DISTRICT JUDGE